IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOANN A. JACKSON,                    )
                                     )
            Plaintiff,               )
                                     )
                                     )    CIV-11-440-M
v.                                   )
                                     )
MICHAEL J. ASTRUE,                   )
  Commissioner of Social Security    )
    Administration,                  )
                                     )
            Defendant.               )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her concurrent applications for disability insurance and

supplemental security income benefits under Title II and Title XVI of the Social Security Act,

42 U.S.C. §§ 416(I), 423, 1382.   Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications on February 15, 2007, and alleged that she

became disabled due to depression and obesity on August 2, 2006. (TR 140-142, 145-147,

1

158, 183).  She described a high school education and previous jobs as an administrative

clerk, bookkeeper, and administrative assistant. (TR 159, 174-181).  Plaintiff's applications

were administratively denied. (TR 61-64).  At Plaintiff's request, a hearing *de novo* was

conducted before Administrative Law Judge Headrick ("ALJ") on June 22, 2009. (TR 25-52).

After reviewing the evidence and the hearing testimony of Plaintiff and a vocational expert

("VE"), the ALJ issued a decision on September 2, 2009, in which the ALJ found that

Plaintiff was not disabled within the meaning of the Social Security Act. (TR 14-24).  The

ALJ found that despite Plaintiff's depression, obesity, hypertension and status post right

carpal tunnel release, she was capable of performing sedentary work limited to the

performance of "simple tasks with routine supervision." (TR 18).  She could "relate to

supervisors and peers on a superficial basis" and "adapt to a work situation" but she could

not "relate to the general public." (TR 18).  Based on this residual functional capacity

("RFC") assessment and the VE's testimony concerning the availability of jobs for an

individual with this RFC assessment and Plaintiff's vocational characteristics, e.g., younger

individual with high school education, the ALJ found that Plaintiff could perform the

unskilled jobs of optical goods assembler and semi-conductor assembler. (TR 22-23).  The

ALJ accordingly concluded that Plaintiff was not disabled within the meaning of the Social

Security Act.

Plaintiff sought review of the ALJ's decision by the Appeals Council and submitted

additional medical evidence with the request. (TR 5).  This evidence included an RFC

assessment completed by Plaintiff's treating family physician, Dr. Finley, on July 8, 2010,

in which Dr. Finley stated that as a result of Plaintiff's impairments due to degenerative disc disease in her lower back with radiculopathy, spinal stenosis, right wrist carpal tunnel syndrome, and degenerative joint disease Plaintiff would not be able to perform work on a sustained and continuing basis. (TR 504). The Appeals Council denied Plaintiff's request for review. (TR 1-4).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is

disabled. <u>Doyal</u>, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. <u>Id.</u>  In this case, Plaintiff's claim was denied at step five.  At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

III. <u>Evaluation of  Treating Physician's Opinion</u>

Plaintiff contends that the Appeals Council erred in failing to properly analyze Dr. Finley's RFC assessment.[1]  The medical record shows that Dr. Finley was Plaintiff's primary treating physician beginning in February 2009 and that he saw her one to two times per month over the next fourteen months.  (TR 383-465).  Dr. Finley's office notes of his treatment of Plaintiff include diagnoses of, and various treatment regimens prescribed for, hypertension, edema, sciatica, obstructive sleep apnea, Bell's Palsy, type II diabetes mellitus, migraine headaches, anxiety disorder, depression, obesity, proctitis, and low back pain.  Even though some of these treatment records pre-dated the ALJ's decision, none of Dr. Finley's treatment records were submitted by Plaintiff until she submitted her request for review of the ALJ's decision.

---

[1]Although Plaintiff initially argues that this evidence was not properly considered by the ALJ, Plaintiff also admits that Dr. Finley's RFC assessment was first submitted by Plaintiff to the Appeals Council.  Therefore, Plaintiff's argument is construed to assert error by the Appeals Council, not the ALJ.

In the Notice denying Plaintiff's request for review, the Appeals Council stated that it had considered all of the new evidence submitted by Plaintiff with her request for review but determined that the new evidence was "in line with the medical records that were previously submitted to the [ALJ] and thus d[id] not warrant any change in the decision." (TR 2).

Generally, it is a well-established principle that "the Appeals Council must consider additional evidence offered on administrative review - after which it becomes a part of [the] record on judicial review - if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).  In this case, the Appeals Council accepted the new evidence submitted by Plaintiff without differentiating whether the evidence originated before the ALJ's decision or after the ALJ's decision.  (See TR 1-2).  The Appeals Council merely found that the additional evidence submitted by Plaintiff was considered but that it did "not warrant any change in the [ALJ's] decision." (TR 2).

Here, as in the Tenth Circuit's decision in Krauser, the dilemma is created by the Appeals Council's acceptance of new evidence that did not qualify as chronologically-pertinent evidence.  In Krauser, the Tenth Circuit reasoned that

> [w]hen the Appeals Council accepts [non-qualifying] new evidence, the claimant obviously benefits (he may not succeed with such evidence, but that is a separate issue), hence the only 'aggrieved' party that could object is the agency. But the agency would be objecting to its own ruling.  In supporting a denial of benefits on judicial review by challenging its own rulings as to the admission of the evidence on which the denial was based, the

> agency would inherently be offering a new, post-hoc rationale
> for its decision contrary to the general rule of SEC v. Chenery
> Corp., 318 U.S. 80, 94-95, 63 S.Ct. 454, 87 L.Ed. 626 (1943),
> and SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91
> L.Ed. 1995 (1947).

Krauser, 638 F.3d at 1328-1329.  The circuit court in Krauser did not resolve the issue

because the court found that even with the new evidence considered by the Appeals Council

in that case the ALJ's "rejection of a depression impairment" was supported by substantial

evidence in the record. Id. at 1329.

The Appeals Council did not provide any analysis of Dr. Finley's RFC assessment.

In this circuit, ALJ's must determine whether a medical source opinion provided by a

disability claimant was entitled to controlling weight or, if not, how much weight should be

given to the treating physician's opinion. See Watkins v. Barnhart, 350 F.3d 1297, 1300 910th

Cir. 2003)(setting forth proper analysis for ALJs to follow in considering treating physicians'

opinions).  Plaintiff contends that the Appeals Council erred by failing to undertake the

analysis dictated by Watkins before denying review of the ALJ's decision.  However, in two

unpublished orders issued after the Krauser decision, the Tenth Circuit Court of Appeals held

that when the Appeals Council rejects a disability claimant's request for review, the Appeals

Council is not required to provide any particular type of analysis of new evidence it has

considered and made a part of the record.  Robinson v. Astrue, 397 Fed.Appx. 430, 432-433,

2010 WL 3402363, * 2 (10th Cir. Aug. 31, 2010)(unpublished order); Martinez v. Astrue, 389

Fed.Appx. 866, 868-869, 2010 WL 3010350, * 2 (10th Cir. Aug. 3, 2010)(unpublished order).

In Martinez, the Appeals Council stated that it had considered the claimant's arguments as

well as the additional evidence he submitted, including a report of a psychological evaluation of the claimant that took place after the ALJ's decision. <u>Martinez</u>, 389 Fed.Appx. at 867-868. The court held that if the Appeals Council explicitly states it considered new evidence, "there is no error, even if the order denying review includes no further discussion." <u>Id.</u> at 868-869. Thus, in this case, the Appeals Council stated that it had considered all of the evidence submitted by Plaintiff in the record and with her request for review. Under these circumstances, the Appeals Council did not err by failing to provide any specific analysis of Dr. Finley's written RFC assessment.

As the Appeals Council properly informed Plaintiff, because it denied her request for review the ALJ's decision became the final decision of the Commissioner. <u>See</u> 20 C.F.R. §§ 404.955, 404.981; <u>Sims v. Apfel</u>, 530 U.S. 103, 106-107 (2000). Consequently, "in evaluating the Commissioner's denial of benefits under the substantial evidence standard, the district court must consider qualifying new evidence submitted to the Appeals Council." <u>Martinez</u>, 389 Fed.Appx. at 869 (citing <u>O'Dell v. Shalala</u>, 44 F.3d 855, 859 (10th Cir. 1994)). If the ALJ's disability determination was supported by substantial evidence, then the district court must "determine whether the qualifying new evidence upsets that decision." <u>Id.</u>

IV. <u>Step Four - RFC Finding and Credibility Determination</u>

The ALJ found at step four that Plaintiff's depression and physical impairments due to hypertension, obesity, and status post carpal tunnel release did not preclude Plaintiff from performing a restricted range of sedentary work. At the fourth step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant

retains the RFC to perform the requirements of all past relevant work.   The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

Because the ALJ found Plaintiff had a severe mental impairment, the ALJ was required to

> follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly. This procedure first requires the [Commissioner] to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2) [ and § 416.920a(b)(2)].   The [Commissioner] must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. § 404.1520a(b)(3) [and § 416.920a(b)(3)].

Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir. 1995)(internal citation omitted).  The ALJ is required to "incorporate the pertinent findings and conclusions" in his or her decision, 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2), and relate the medical evidence to those conclusions. Cruse, 49 F.3d at 618.

In this case, the ALJ followed the proper procedure by tracking the requirements of the listing for affective disorders, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  The ALJ found

that Plaintiff's impairment due to depression had resulted in moderate restrictions in activities of daily living, moderate restrictions in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of deterioration or decompensation of extended periods of time. (TR 17-18). Plaintiff contends that there is not substantial evidence to support the finding that her mental impairment had resulted in only "mild" limitations in concentration, persistence, or pace. She points to the psychiatric review technique ("PRT") form provided by the agency's medical consultant, Dr. Lochner, who opined that Plaintiff's depression had resulted in "moderate" limitations in concentration, persistence, or pace. (TR 300).

As Plaintiff points out, the ALJ stated in the decision that he had given "great weight" to the opinions of the state agency medical consultants "regarding the claimant's physical and mental limitations as these opinions are not contradicted and are supported by the medical evidence of record . . . ." (TR 22). The ALJ was not required, however, to incorporate all of the PRT findings made by the agency's medical consultant in the RFC finding. In the consultant's notes included in the PRT form, the consultant stated that Plaintiff's "[a]ttention and concentration were slightly decreased" during the mental status examination conducted by the consultative psychological examiner, Dr. Clemens. (TR 278-281, 302). Moreover, Dr. Lochner also provided a mental RFC assessment in which the psychologist opined that as a result of Plaintiff's depression impairment she was markedly limited only in her ability to understand, remember, and carry out detailed instructions and in her ability to interact appropriately with the general public. (TR 304-305). Dr. Lochner specifically stated that despite Plaintiff's mental impairments she could "perform simple tasks with routine

supervision," "relate to supervisors and peers on a superficial work basis," and "adapt to a work situation," but she could not "relate to the general public." (TR 306). As Plaintiff admits, the ALJ incorporated all of these functional limitations, as found by the medical consultant, in the RFC finding and in the hypothetical questioning posed to the VE during the administrative hearing. (TR 46). Non-exertional impairments must be expressed by the ALJ "in terms of work-related functions," as required by Social Security Ruling 96-8p, 1996 WL 374184, at * 6 (1996). "Work-related mental activities . . . include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.

The hypothetical questions posed to a VE must state the claimant's impairments "with precision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991)(quotation omitted). The ALJ's hypothetical questions precisely followed the medical consultant's RFC assessment. Plaintiff does not argue otherwise. Plaintiff has not demonstrated that the medical consultant's findings of "moderate" difficulties in attention, concentration, or pace on the PRT form were inconsistent with the medical consultant's RFC assessment of specific work-related limitations arising from Plaintiff's depressive disorder.

The ALJ's RFC finding is supported by substantial evidence in the record, which includes the report of the consultative psychological examiner, Dr. Clemens, who noted that Plaintiff was oriented, she exhibited no memory deficits, average intellect, adequate vocabulary, good general fund of information, good judgment, and only slightly decreased

attention and concentration during a mental status examination. (TR 279). Plaintiff reported she had been terminated from multiple jobs for insubordination, poor attendance, and tardiness, that she was undergoing counseling and taking a low dose of anti-depressant medication, and that she was able to drive and provided care for her teen-aged son. (TR 278-279). Dr. Clemens noted that "underlying personality factors" rather than depression were likely to interfere with Plaintiff's ability to function. (TR 280).

The therapeutic notes contained in the record submitted to the Appeals Council do not provide qualifying evidence which detracts from or "upsets" the ALJ's decision. Those records show that in January 2009 Plaintiff was working for her parents, "keeping their home in order," and "responsible for her parents' bills," that in June 2009 she was happy she was able to help by allowing her son's friend to live with them, that she wanted to "volunteer" in June 2009, that she wanted to lose weight and start a walking exercise program in July 2009, that she would be visiting a friend in Arizona in August 2009, and that she was "feeling better emotionally and physically" and "feeling happier" in August 2009. (TR 509, 520, 529, 531, 533, 535, 536). In March 2010, Plaintiff stated "I like to be around people" as one of her strengths on a therapeutic form completed at her treating clinic. (TR 580). The therapist's notes of treatment of Plaintiff through 2009 do not provide objective findings of abnormal mood, affect, lack of orientation, or other abnormal symptoms on a persistent basis. (TR 509-547).

Plaintiff complains that the ALJ did not explain what weight he attached to the opinion of Plaintiff's therapist. However, Plaintiff does not refer to a specific opinion provided by

her therapist.  Rather, Plaintiff refers to a hand-written note addressed "To Whom It May Concern," dated February 19, 2009, and signed by Ms. Hix, who identifies herself as Plaintiff's therapist and sets forth a list of symptoms which she states led to a diagnosis of major depressive disorder, recurrent, without psychotic features.  (TR 216-217).  Ms. Hix stated in this note that Plaintiff's depression symptoms were showing "marked improvements" with therapy.  Although Ms. Hix stated that she "support[ed]" Plaintiff in her decision to apply for disability benefits, the therapist did not state that Plaintiff was unable to work.  The therapist stated only that Plaintiff had "difficulty concentrating," but this statement is not inconsistent with the RFC finding that Plaintiff was capable of performing simple tasks with routine supervision. (TR 216).

Plaintiff refers to another letter dated October 18, 2007, authored by Ms. Hix, which again states that Plaintiff was undergoing counseling at Agape Counseling Center for depression beginning in March 2007. (TR 345).  The ALJ recognized in the decision that Plaintiff was undergoing counseling at Agape Counseling Center beginning in March 2007 in order to stabilize her mood and reduce her depression. (TR 21). Because the therapist's statements in the note and letter did not conflict with the ALJ's RFC assessment, no error occurred.

Plaintiff also refers to an unsigned, undated "Mental Status Form" appearing in the record. (TR 344).  Assuming that Ms. Hix completed this form, Ms. Hix stated that Plaintiff was undergoing counseling for depression, that she was oriented, that she spent time caring for her parents and sons, that she would benefit from continued therapy, that she had "some

12

difficulty" with her memory, and that she was 'emotionally unstable and . . . easily stressed." (TR 344). The therapist's statements on this form do not conflict with the ALJ's RFC assessment. Thus, the ALJ did not err in failing to specifically address this form.

Plaintiff contends that the ALJ's credibility analysis was deficient. When the medical record shows that a claimant has an impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, the ALJ must evaluate the intensity and persistence of those symptoms and determine whether the symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). To do this, the ALJ must "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Factors the ALJ may consider in evaluating the claimant's symptoms include "the levels of [her] medication and [its] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). "Credibility determinations are peculiarly the province of the finder of fact," and credibility determinations will not be upset "when supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and

alteration omitted).

In this case, the ALJ's decision contains a brief finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] [RFC] assessment." (TR 20).  The ALJ went on to recognize that the credibility determination requires consideration of the record and Plaintiff's subjective statements in relation to the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929, and Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). (TR 20).  The ALJ then summarized relevant portions of the medical evidence and Plaintiff's testimony during the hearing and statements in the record.

In Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004), the court found that the ALJ had merely "recited boilerplate language stating that full consideration had been given to claimant's subjective complaints . . ." and held that this boilerplate language was "insufficient, in the absence of a more thorough analysis, to support an ALJ's credibility determination as required by Kepler [v. Chater, 68 F.3d 387, 388-389 (10th Cir. 1995)]." Id. Unlike the circumstances in Hardman, however, the ALJ's decision reflects the specific evidence that caused the ALJ to reject Plaintiff's testimony. Cf. Hardman, 362 F.3d at 679 ("As is the risk with boilerplate language, we are unable to determine in this case the specific evidence that led the ALJ to reject claimant's testimony" and "[w]e are unable to reconcile [the] medical evidence with the ALJ's boilerplate, conclusory statement . . . .").

In his decision, the ALJ cited objective medical evidence showing that Plaintiff had

14

undergone surgery in August 2006 to relieve her complaints of left arm pain, numbness, loss of grip strength. (TR 20). On examination, her grip strength was normal. (TR 20). The ALJ summarized the results of the consultative psychological and physical examinations of Plaintiff conducted in June 2007, including the findings of a physical examination showing Plaintiff exhibited normal range of shoulder joint motion, normal gait, and normal gross and fine manipulation ability. (TR 20-21). The ALJ also reviewed the record of Plaintiff's two-day hospitalization in September 2007 for chest pain and shortness of breath after which, as the ALJ stated, she was discharged with the notation that she could return to normal activity, had no driving restrictions, and was not prescribed any new medication. (TR 20-21). The ALJ reviewed the letter submitted by Plaintiff's therapist and the mental status form presumably authored by Plaintiff's therapist, as well as the findings of an examining physician, Dr. Reddy, who indicated in June 2006 that Plaintiff exhibited good grip strength in both wrists, a normal gait, normal range of motion in her cervical spine, and no nerve deficits in her right upper extremity. (TR 21-22). The ALJ further reviewed the record showing Plaintiff underwent a sleep study in February 2009, she was diagnosed with severe obstructive sleep apnea, and she was fitted with a CPAP machine to treat this condition. (TR 22). The ALJ reasoned that "great weight" was given to the opinions of the agency medical consultants because the opinions were not contradicted and were supported by objective medical evidence in the record. (TR 22). The ALJ also reasoned that no treating or examining physician had indicated Plaintiff was disabled or had imposed limitations greater than those determined in the ALJ's RFC finding. (TR 22). None of the medical records

submitted by Plaintiff at or before the hearing document specific physical or mental functional limitations that would preclude the sedentary RFC, with additional mental restrictions, found by the ALJ.    Because the ALJ linked his credibility findings to the evidence, no error occurred, and the credibility determination should be upheld. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)(no "formalistic factor-by-factor recitation of the evidence" is required in determining claimant's credibility as long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility").

The medical evidence submitted by Plaintiff to the Appeals Council does not detract from the ALJ's credibility determination.  The record shows that in July 2009 Dr. Finley noted that he had reviewed MRI testing of Plaintiff's lumbar spine and that the study revealed the presence of a bulging disc impinging on exiting nerves at one level.  (TR 425-426).  Dr. Finley prescribed Mobic®, a nonsteroidal anti-inflammatory medication, for Plaintiff's complaint of back pain and referred Plaintiff to Dr. Cravens, an orthopedic specialist for further evaluation.  Dr. Finley's records show that Plaintiff was treated in 2009 and the early part of 2010 for various other conditions, including joint pain, neck and upper back pain, edema, hypertension, Bell's Palsy, and diabetes, all of which improved and/or resolved with medications. (TR 401 (edema resolved with medication; migraine headache resolved with neck manipulation), 404 (neck and upper back pain treated effectively with manipulative therapy), 426 (diabetes notably improved with medications and joint pain helped with medication), 441 (Bell's Palsy notably improved on medication), 444 (notable improvement of edema on medication), 461 (hypertension improved with medication)).  Plaintiff reported

to Dr. Finley in May 2009 that she was "doing well" on her CPAP machine prescribed to treat her obstructive sleep apnea, that she no longer had drowsiness during daytime hours, and that "wakes up in the morning feeling refreshed and ready for the day." (TR 435). She again reported in October 2009 that she was "getting very good sleep" with the CPAP machine. (TR 408).

In July 2009, Dr. Cravens authored a letter addressed to Dr. Finley in which he stated that he had examined Plaintiff and interpreted MRI testing of Plaintiff's lumbar spine as showing "at most" mild to moderate spondylosis at one level. (TR 587-588). Dr. Cravens noted that Plaintiff did not exhibit signs of motor, sensory, or reflex loss, that there was "no surgical indication," and that he had recommended an epidural steroid injection and physical therapy as treatment. (TR 587-588). Dr. Finley's records reflect consistent findings of no motor, sensory, or reflex deficits as well as a normal gait. (TR 387, 395, 411). The ALJ's credibility determination and RFC finding are well supported by the record, and no error occurred in the ALJ's evaluation of this evidence in connection with the fourth step determination.

V. Step Five

Plaintiff contends that the ALJ's hypothetical posed to the VE was incomplete. Although the ALJ did not pose specific functional limitations to the VE, the ALJ referred to the PRT form and the mental and physical RFC assessments completed by the agency medical consultants. (TR46). As previously found, the ALJ's RFC finding is well supported by the evidence in the record. No error occurred in this regard. The VE's testimony, which

was adopted by the ALJ, provides substantial evidence to support the Commissioner's step five determination that Plaintiff was not disabled within the meaning of the Social Security Act.  Therefore, the Commissioner's decision should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  March 5th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____13th_____ day of _____February_____, 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE